CONTINENTAL WIRE FENCE CO. v. PENDERGAST et al.

(Circuit Court, D. Minnesota, Fourth Division. August 9, 1903.)

1. PATENTS—SUIT FOR INFRINGEMENT—ESTOPPEL TO DENY VALIDITY.

Where the vendor of a patent who is estopped to question its validity is co-operating with others in its infringement, those who are acting with him are subject to the same estoppel.

2. SAME—PRELIMINARY INJUNCTION—SUFFICIENCY OF SHOWING.

The assignee of an unadjudicated patent *held* entitled to a preliminary injunction against infringement by the patentee, who was in fact the vendor, and his two codefendants, although the latter were nominally sole owners and operators of the infringing machine as partners, and the patentee merely an employé, where infringement clearly appeared, and it was shown that immediately on selling his interest in complainant corporation the patentee associated himself with defendants, superintended the construction of the infringing machine, hired men and interested himself in the extension of the business, and there was evidence tending to show that he invested money and was in fact interested in the business.

3. SAME—INFRINGEMENT—FENCE MAKING MACHINE.

The Pendergast and Whidden patent, No. 628,253, for a fence-making machine, *held* infringed by the machine of the Sutherland patent, No. 708,679, on a motion for a preliminary injunction.

In Equity. Suit for infringement of letters patent No. 628,253, granted July 4, 1899, to Maurice D. Pendergast and James M. Whidden. On motion for preliminary injunction.

The following is a copy of machine alleged to have been infringed:

A. C. Paul, for complainant.

Williamson & Merchant, for defendants.

LOCHREN, District Judge (orally). The Continental Wire Fence Company is the owner of patent No. 628,253, issued July 5, 1898, to the defendant Maurice Pendergast and one Whidden, for a wire fence making machine. It is alleged that the defendants infringe certain specified claims of this patent in the machines they have constructed and are operating at Hutchinson, in this state; and the complainant brings the matter before the court on a motion for a preliminary injunction against the defendants.

It is true, as has been held in many cases in the federal courts, that an injunction is a harsh remedy, and should not be allowed where the right is doubtful or the wrong uncertain, or where there is in a patent case any doubt of the validity of the patent or as to the infringement. And, while there is a presumption of the validity of a patent from the mere issuing of the same by the Patent Office, that is not considered by the courts sufficient to warrant the issuing of an injunction; but they require, in addition, either that the validity of the patent shall have been determined by a final judgment, after an actual trial, where there appears to be no sign of collusion, or that the right of the patentee shall have been admitted by the public, by user for such a length of time as to raise the presumption that the right is not denied or contested. And there should also be like certainty with reference to infringement.

The principal point raised here is whether the circumstances of the case are such as to raise an estoppel against the defendants. Where a defendant is the vendor of the patent, whether he is a patentee or a transferee of the patent, if he has himself sold it for a valuable consideration, then from that very fact he is estopped from denying the validity of the patent. It is true that a patent for a machine that is inoperative is void; but with respect to that, the evidence shows that machines have been constructed under this patent by one of the patentees, and the same have been operated, and that such machines, or interests in them, were transferred to two of the parties who formed the complainant corporation, Mr. Hirsch and Mr. Bretchet, together with the patent in suit, and another patent as to the fabric that is constructed or claimed to be constructed by this machine. That transfer was made by defendant Pendergast, of a two-thirds interest in the patent and in these machines, on or about the 29th day of June, 1901. The plaintiff corporation was formed about that time, and the work of operating these machines was carried on under the superintendence of Mr. Pendergast until some time in November or December of that year, when Mr. Pendergast disposed of his remaining interest in the property and patents, and in the corporation which the three had formed by sale of the same to his associates. At the formation of the corporation, Pendergast put in the patents and machines for his one-third share, and the other parties put in amounts of cash which had been agreed upon. When they were transferred to the corporation, it appears that the patent was held by the mother of Pendergast, and two of the machines by his wife, and one by a

third person; but they were all, in fact, owned and controlled by Pendergast, who caused them to be transferred to the corporation. The bill of sale of the machines stated that they were made in pursuance of this patent, and that bill of sale from the wife of Pendergast was passed and delivered to the corporation by him as the performance of his agreement to make the sale. I think, under those circumstances, that any statements or representations in the bill of sale, so procured by him to be made in the performance of his agreement, must be considered as his representations. Under the circumstances, therefore, I have no doubt that, as far as Pendergast is concerned, he is estopped to deny the validity of the patent, and also to deny that those machines, which he transferred with the patent to the corporation as being made in pursuance of that patent, were so made, and fairly represented the machine which was described in the patent.

The evidence shows that many of the devices of this patent are contained in the machine which was made and operated by the defendants. The carriers and twisters, and some others of the devices, are similar to those described in the first several claims of this patent, with some slight changes. And it seems to me that it clearly appears that these changes do not make them different devices; that what is used in one is fairly the equivalent of what is used in the other. They are used for the same purpose in each machine, and perform the same functions in the same way, substantially. I do not think there is any fair doubt but that the first several claims of the patent which are specified in the bill of complaint are infringed by the defendants' devices.

I think the only remaining question is whether the other defendants, Sutherland and Zickrick, are subject to the estoppel which applies to Pendergast. The rule of law, as shown by the cases which have been cited, is that, where a person who is the vendor of a patent and is subject to an estoppel is co-operating with others in the infringement of the patent, those who are acting with him are also subject to the same estoppel. As to whether these two defendants, Sutherland and Zickrick, are in that situation, the evidence, as shown in the affidavits, is somewhat conflicting. The affidavits of these parties themselves are to the effect that Sutherland and Zickrick alone constitute the partnership, and that Pendergast is simply an employé at day wages. If that is true, the estoppel would not apply to the employers, who were not parties to the sale of the patent; and as Pendergast is only, under that theory, acting as an employé, not doing the business on his own account, the bill would have to be dismissed as to him upon final hearing. But, according to the witnesses whose affidavits have been introduced on the part of the complainant to show how the business was carried on, and the circumstances under which it was commenced, and the relation of the parties to it, it seems that about the time Pendergast finally sold his interest in the complainant company to Mr. Hirsch and Mr. Bretchet, or whoever were the purchasers of that interest, he claimed that in consideration of certain changes in the machine and in its operation, which had been discussed between himself and his associates, as

shown by his letters in October, he was entitled to some further consideration or further remuneration, and if compensation was allowed the complainant corporation should have the advantage of these changes; that if the others did not desire to compensate him, then he would look for some other way of obtaining compensation. That immediately upon selling his interest, he, in connection with Sutherland and Zickrick, began the construction of another machine, which was carried on and completed, and that is the infringement which has been claimed of the patent of the complainant. The manufacture of wire fencing was begun by defendants, and has since been carried on by them, with machines of that kind made by them. The evidence produced tends to show that all this was done under the superintendence of Mr. Pendergast, and has a tendency to show that he placed his means in the business—the means he obtained from the sale of his interest in the complainant company. Further, that he has done more than an ordinary employé working by the day would do—in hiring other men about the work, superintending the business, attempting to extend the business, and perhaps taking steps towards changing the location of the business from one place in the state to another; and that he has been continually actively engaged in these things. The mere fact that there has not been any definite contract between him and the others fixing his position as a partner in the concern is not conclusive, if he really has an interest in it. It is very plain that before his sale to the complainant company he was the owner of this patent, and the owner in fact of two of the machines, although the title to the patent was in his mother, and the title to the machines in his wife. The testimony of certain persons that he was not interested in the defendants' firm—one of these persons being a banker, and others having gone security for the firm, and others seeking perhaps an interest in the business; and that they made inquiries and found that Mr. Zickrick and Mr. Sutherland were the partners, and the only partners in the business—is only conclusive as to the fact that they were the nominal partners, and is not inconsistent with the fact that Mr. Pendergast may be a silent partner in the concern, and have an actual interest in it. Whether he has an interest or not, he has been actively engaged in the construction and operation of these new machines and in the business of producing wire fence from them, and all the defendants have been co-operating together in this.

It seems to me that this makes out a case where an injunction under the rule referred to should be allowed. This seems to be fair, reasonable, and equitable. For fear that there might be any mistake, however, I shall be inclined, if desired on the part of the defendants, to allow them to give a bond to secure to the complainant any recovery that may be adjudged to it in the suit. I say I am inclined to accept such bond, instead of issuing the injunction.