MACEY CO. et al. v. GLOBE-WERNICKE CO.

(Circuit Court of Appeals. Seventh Circuit. April 19, 1910. Rehearing Denied June 10, 1910.)

No. 1,607.

1. PATENTS (§ 129*)—ASSIGNMENTS—EFFECT AS ESTOPPEL—CORPORATION OF WHICH ASSIGNOR IS OFFICER AND STOCKHOLDER.

While a corporation organized by a patentee who has assigned his patent for the purpose of carrying on business in violation of the rights of the assignee is estopped equally with the assignor to deny the validity of the patent when sued for infringement or to invoke an adjudication of invalidity made in a suit against its predecessor in business no such estoppel arises where it was organized in good faith to take over and continue the business of its predecessor, and without any reference to the patent merely because the assignor is one of its stockholders and officers.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 184–186; Dec. Dig. § 129.*]

2. PATENTS (§ 327*)—SUIT FOR INFRINGEMENT—RES JUDICATA—ESTOPPEL.

Complainant brought suit against a partnership for infringement of a patent for a bookcase, which it owned through assignment from the patentee, and the result was an adjudication that the patent was invalid. Pending the suit the partnership was reorganized into a statutory stock partnership with a large increase of its capital and plant, and an enlargement of its business. Some two years after the termination of the suit the active promotor and practical manager of the partnership died, and the remaining stockholders a short time thereafter employed the patentee through whose assignment complainant held its patent as president and general manager on a salary, transferring to him a nominal amount of stock. Such arrangement continued for two years when the partnership, which was solvent, was reorganized as a corporation, having in the main the same stockholders, more than 100 in number. The patentee then became the owner of about one-fifth of the stock, and president of the company. During all of such time the different concerns had made and sold different kinds of office furniture and continued to make and sell, without material change, the alleged infringing bookcases, and complainant brought a new action for infringement against the corporation and its president. *Held* that there was nothing in such facts to show that the defendant corporation was organized for the purpose of infringing the patent or otherwise than in good faith and for legitimate purposes nor to create an estoppel against it or against its president as such which would prevent them from contesting the validity of the patent, and that the corporation was so in privity with its predecessor partnership as to render the decree in the suit against the partnership conclusive of the invalidity of the patent in the second suit.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 327.*

Operation and effect of decision in equitable suit for infringement, see note to Westinghouse Electric & Mfg. Co. v. Stanley Instrument Co., 68 C. C. A. 541.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Globe-Wernicke Company against the Macey Company and Otto H. L. Wernicke. Decree for complainant, and defendants appeal. Reversed.

The appellants, defendants below, appeal from a decree of the Circuit Court granting an injunction and accounting for alleged infringement of letters patent No. 557,737, under a bill filed against them by the appellee, as complainant and owner of such patent. In the bill special circumstances are averred for the relief sought against the appellants, in substance, that the appellant Wernicke is the patentee in the above-mentioned patent and assignor thereof in favor of the appellee for value, and procured the organization of his codefendant, the Macey Company, as a cloak for the manufacture of competing and infringing products, and was both manager and principal stockholder thereof.

The complainant appellee is an Ohio corporation, located at Cincinnati, Ohio; and the defendant appellant, the Macey Company, is a Michigan corporation, located at Grand Rapids, Mich., but having a place of business (as well) at Chicago, Ill., while the defendant appellant, Wernicke, is president, general manager and stockholder therein, residing at Grand Rapids, Mich., and having neither personal residence location, nor place of business in Illinois. The answer of the Macey Company takes issue upon all material charges of the bill, except that the defendant Wernicke is its president, general manager, and one of its stockholders; challenges with apt averments the validity of the patent; and sets up prior adjudication of invalidity thereof between the complainant and the answering defendant's predecessor in title, business, and interest, with apt averments of its succession to the benefits thereof. On behalf of the defendant Wernicke, appearing specially for such purpose, a plea was interposed that the court was without jurisdiction over him in personam, for the reason that he was a citizen and resident of Michigan and "has no regular and established place of business" in Illinois, and his sole connection with the business of the Macey Company is that of "an officer and employé" thereof. This plea was overruled and Wernicke subsequently filed his answer, reserving the jurisdictional objection, setting up (in substance) the matters of defense averred on the part of the Macey Company, together with averments of his former relations to the complainant and of his present interest in and relations to the Macey Company.

The facts involved in the various contentions of the parties are mainly stipulated of record, and the only substantial controversies of fact arise in such inferences from undisputed circumstances in evidence as are sought by the parties respectively, for affirmance or reversal of the decree. Such facts as are deemed pertinent and material upon the issues are stated in the opinion.

Fred L. Chappell and McGorge Bundy, for appellants.
Robert Parkinson, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The decree appealed from runs alike against both defendants appellants, in effect adjudging infringement and granting relief against the Macey Company, as the manufacturing corporation, and Wernicke, as an individual trespasser; and the opinion of the trial court rests the decree upon this deduction of fact, as we understand the opinion: That the Macey Company was organized as a corporation, at the instigation of Wernicke (patentee and assignor of the patent in suit), for the purpose of carrying on business in violation of the rights of complainant under the patent, and the business thereof was conducted to

that end, so that the corporation and all associates joining in such object were Wernicke's instrumentalities for the alleged infringement. The estoppel which arises against the assignor of the patent and his associates, under a state of facts thus assumed, is well settled; and were such finding in conformity with the evidence, we believe the authorities concur in the rule which excludes both defendants from setting up either defense challenging the validity of the patent—whether through prior adjudication referred to or other evidence. On the other hand, if it is proven that the Macey Company was organized by the body of incorporators, entirely in good faith, as a concern to take over the plant and business of its predecessor therein, having a long-established line of manufacture and sale of sectional bookcases and other furniture, and that it was continuing and carrying on such business accordingly—was neither organized as the instrument of Wernicke to invade rights of the complainant under his patent, nor operating in any just sense as his creature for such object—the doctrine above stated is not per se applicable, through the fact alone that Wernicke is serving it as manager and has interest therein as a stockholder (Boston Lasting Mach. Co. v. Woodward, 82 Fed. 97, 98, 27 C. C. A. 69; Regent Mfg. Co. v. Penn. Elec. & Mfg. Co., 121 Fed. 80, 82, 57 C. C. A. 334; Babcock & Wilcox Co. v. Toledo Boiler Wks. Co., 170 Fed. 81, 85, 95 C. C. A. 363); although evidence of mala fides in such engagement and service, doubtless, may create the estoppel with or without fraudulent purpose in organizing the corporation.

The appellants contend that the invalidity of the patent in suit is res adjudicata—at least as between the complainant and the Macey Company—and that its invalidity is established as well by other proof in the present record. If the Macey Company, however, is subject to the above-mentioned rules of estoppel under the state of facts in evidence, neither these contentions, nor others discussed in the argument, call for consideration upon this appeal. So, the inquiry is fundamental, whether that rule is rightly applicable to the case; and while the inferences of fact stated in the opinion of the trial court are entitled to great weight thereupon, the circumstances on which they are predicated are mainly stipulated in evidence and entirely uncontroverted. Our independent judgment, therefore, is rightly invoked, and must be exercised for their interpretation.

The facts showing the relations of the complainant to and with the parties and subject-matter of the controversy may be briefly summarized: The Globe-Wernicke Company is a corporation made up of two former corporations—the Globe Company, of Cincinnati, Ohio, and the Wernicke Company, originally of Minnesota, located at Minneapolis. In 1895 the defendant Wernicke assigned to the Wernicke Company his application for the patent in suit, not then granted; and that company was engaged for some time in manufacturing sectional bookcases at Minneapolis, under the patent—with Wernicke appearing to be its chief member—and subsequently removed to Grand Rapids, Mich., where the business was carried on up to 1899. Its entire business, including all patents, was then (1899) purchased by the

Globe Company, engaged in other manufacturing lines of kindred nature at Cincinnati, for $100,000, paid in an issue of stock for that amount, in a new corporation then organized as the Globe-Wernicke Company (complainant) located at Cincinnati. Wernicke negotiated this sale on the part of his company, became a stockholder, and one of the officers of the consolidation, and so continued until 1903, when he retired, withdrawing all interest therein, for cause not explained, and sought other employment for himself, and his means thus released from the complainant, engaging temporarily in lumber and timber trade. The complainant has carried on from the outset a large and profitable business in its several manufacturing lines, with sectional bookcases, made under the patent in suit, one of its principal products; and Wernicke superintended (mainly) this line of manufacture. In 1900 the complainant filed a bill in the Circuit Court (Western district of Michigan) against Fred Macey Company (a copartnership, predecessor of the defendant corporation in the manufacture of sectional bookcases and other furniture) for infringement of the present patent. This bill was dismissed in 1901, on final hearing, upon the merits; and such decree was affirmed in 1902, on appeal to the Circuit Court of Appeals (Sixth circuit), reported 119 Fed. 696, 56 C. C. A. 304. Both opinions are in evidence, and each declared the patent claims in question to be invalid for want of invention.

In reference to the defendants and appellants, the facts are alike stipulated or undisputed. The present corporation, the Macey Company, was organized in 1906, but it is stipulated (in effect) that its plant is owned and its manufacturing business is carried on in direct succession, through intermediate owners and operators, from the above-mentioned Fred Macey Company, which commenced the manufacture of sectional bookcases at Grand Rapids, in 1899, about contemporaneously with the dissolution of the Wernicke Company and transfer of its business to Cincinnati. Fred Macey and C. W. Matheson constituted the firm known as Fred Macey Company in 1900, when the above-mentioned infringement suit was brought by the present complainant. For enlargement of capital and business, pending such suit, they organized a limited partnership (quasi corporation) under the Michigan statute, called Fred Macey Company, Limited, with an issue of common stock for $600,000, taken by the partners in exchange for the old business (and excessive in amount), and $400,000 of preferred stock, of which $300,000 was sold for cash to numerous local purchasers and $100,000 retained in the treasury. An extensive plant was built, and (as stipulated) this company "succeeded to the business of the" copartnership. It was managed by Macey until his death, in February, 1904, with the business greatly enlarged; and the manufacture and sale of the alleged infringing bookcases constituted a considerable portion of the business, both before and after the adjudications against the patent. We do not find in the record direct testimony that the expenses of the litigation were borne by the new company—stated in the brief for appellants to be the fact, while appearing only as proof offered upon an application for reopening the

case—but its actual participation therein and knowledge thereof on the part of the complainant may justly be inferred from the undisputed circumstances. Matheson (the original copartner) remained in the statutory reorganization for two years or more, mainly in charge of financial matters, but useful in other departments, and had withdrawn from the concern some time before Macey died. Macey, however, was practical head of affairs and had demonstrated the profitableness of the various lines of product, particularly in the manufacture of bookcases after release from the charge of infringement; and his last sickness and ultimate death left the company with a large plant and active business, and no member or employé of experience to manage the affairs. The preferred stockholders, representing $300,000 of cash capital, were many of them engaged in other business, and it appears that none were qualified or available to take charge permanently; so that all interests were in frequent conference, for several weeks in the early part of 1904, over selection of a manager, with Mr. Wylie (a banker and stockholder) leading therein. As the defendant Wernicke was well known among them (through his former residence and business in Grand Rapids), and information was received that he was entirely free from interest in the complainant and engaged in other business, these stockholders resolved to negotiate with him to become manager. He was secured accordingly, at an annual salary of $9,000 (with inconsiderable allowances of common stock, to confer a nominal interest) and Wernicke became president and general manager, and so conducted the business, commencing in April, 1904, for about two years; and the evidence establishes that it was carried on without substantial change in the previous lines of manufacture and trade. Nor does any other change appear worthy of note, except (a) that the name of the statutory copartnership was changed July 30, 1904, to Macey-Wernicke Company, Limited, and (b) that an improved "binding strip" was adopted for the bookcases so manufactured (continued under the name of "Macey sectional bookcases") which improvement was devised by F. W. Tobey and patent No. 789,579 granted therefor.

During the second year of operation under Wernicke's management, all parties in interest became satisfied that reorganization under a corporate form was needful for a twofold object: To reduce the existing common stock (largely watered) to a just ratio, and obtain further cash capital as means for discharging a large indebtedness which had long been carried by several local banks. The banks were unwilling to renew these loans; and with or without insistence on their part, the business policy thus proposed on the part of the management and preferred stockholders, who had furnished the bulk of capital, was (to say the least) desirable. It was clearly shown, as the result of the first year's business under Wernicke, that the net earnings had been sufficient to make the business profitable to stockholders under such plan, if existing interests were scaled down to conform to the actual value of the concern. Whether this reorganization project was first suggested and advocated by Wernicke, or by other members, does not clearly appear, nor can the fact thereof be deemed material under

the facts stated. The matter was pending before stockholders' meetings and committees throughout the fall of 1905, upon reports submitted—one by a committee and another by Wernicke—recommending a plan and naming the amount of stock for a new corporation at $600,000, with $400,000 preferred and $200,000 common stock, whereof Wernicke offered "to take or place $125,000 of the common stock at par" for cash, provided existing stockholders "take not less than $250,000 of the proposed preferred stock;" and it is unquestionable that the ultimate settlement and valuation of all interests in the existing company, and reorganization accordingly in the new corporation, became effective through the work and co-operation of these stockholders—again under the leadership of Mr. Wylie, but well supported by Mr. Wernicke—for preservation and betterment of their joint interests in the plant and business. Incorporation was commenced by executing preliminary articles in December, 1905, and was completed under the present organization in March, 1906. In these initial arrangements, one fact may be noted in passing—which is pressed in support of the decree, but believed by us to be without force under either issue—namely, that the corporate name first intended was that of "Macey-Wernicke Company." This purpose was stopped, through a bill filed by the present complainant in a state court and a preliminary injunctional order granted (December 14, 1905) thereupon. The issues of unfair competition under such bill are pending for final hearing in the state court, and are in no sense pertinent nor involved under the present issue of infringement of the patent—notwithstanding averments in this bill tending in that direction and discussion of its bearing in the argument. The corporation was finally organized as the Macey Company.

The numerous items of consideration which enter into this reorganization and its membership and shares respectively are stipulated in evidence, but we believe the following general summary to be sufficient to note their utmost import either way on the issue before us: Valuation of all tangible property acquired from the old company, for credit to the stockholders respectively and pro rata, was fixed at $515,-187; from which was deducted $200,187 for the indebtedness (above mentioned, mainly to banks), leaving the net valuation, for credit, $295,000; and it is worthy of mention that the usual trade values of "good will" or established business were excluded from consideration in this allowance. The corporate capital was made $600,000, one half common and the other half preferred; and the $295,000 net value received from the old stockholders was thus credited: $263,285 to preferred, and $31,715 to common stockholders. Wernicke contributed $80,000 in cash, for which he received common stock at par; other old stockholders contributed $47,000 in cash for new stock; and new stockholders came in, contributing $27,000. Thus the paid-in corporate capital was $447,000, inclusive of the plant and property, of which the above-mentioned valuation stands unimpeached. The old company had 134 stockholders; 121 of these became stockholders in the corporation, together with 6 or 7 new stockholders, making up its

membership; and the share of Wernicke was less than one-fifth of the aggregate stock issued, with no evidence to infer that his control extended beyond his own shares.

We believe, therefore, that neither inference of fact on which the opinion of the trial court predicates the decree is authorized by the evidence; that the solvency of the old company appears as a conceded fact, with its net appraisal of $295,000, which excluded an asset of undoubted further value; that its burden of indebtedness to the banks, while cause for embarrassment under the circumstances, was not indicative of insolvency, nor that the business "had no chance of success" under good management; that the death of Macey and other conditions stipulated, justified the course adopted by the stockholders to obtain a manager; that no circumstance appears to impute bad faith or ulterior purpose, either on their part in negotiating with Wernicke to undertake the management, or on his part in accepting it; nor that evasion of any rights possessed by the complainant under the patent was contemplated by either party as inducement to such employment, nor in the subsequent operations and ultimate reorganization above mentioned. Were it assumed that conduct appeared, tending to prove unfair competition in the use of Wernicke's association and name in the business—and no intimation of such fact is intended by this remark—it would furnish no support for the estoppel sought under the present bill for infringement of the patent, involving no such issue.

When Wernicke was employed as manager of the company, the manufacture of the sectional bookcases was carried on openly, under the protection (assumed on the part of the company, to say the least) of a final decree against the validity of the patent; and no substantial change therein was either contemplated or made under the new management, in so far as appears. Indeed, while the evidence shows that various other lines of manufacture were carried on before and continued after Wernicke became manager—for instance, together with the so-called "Macey sectional bookcases," the catalogues (introduced by complainant) show "Macey desks," "Macey leather furniture," "Macey filing appliances," and other articles—no testimony is introduced tending to show either the extent of bookcase manufacture, at any stage of the proceedings, or its relative share in the output.

In conformity with the foregoing view, we are of opinion that the employment of the patentee, Wernicke, by the appellant, the Macey Company, and its relations to him are free from the taint which might otherwise make the doctrine of estoppel in question applicable to the corporation; that each of the defenses set up in its answer is open to proof in its favor under the charge of infringement; and that error is well assigned for denial of the benefits thereof, if the evidence establishes invalidity of the patent claims in suit. Boston Lasting Machine Co. v. Woodward, ante, and other above-mentioned authorities. Furthermore, if the appellant Wernicke is assumed to be rightly joined as defendant with the Macey Company, in his representative capacity as president and manager of the corporation, he is equally entitled to the

benefits of such defense for all participation, as representative of the corporation in the alleged infringement. Belknap v. Schild, 161 U. S. 10, 25, 16 Sup. Ct. 443, 40 L. Ed. 599, and authorities above cited. Neither his assignment of the patent, nor his former relations to the complainant can bar him from such employment by and service with the Macey Company under the circumstances above stated.

The contentions that Wernicke is subject to jurisdiction and liability individually, aside from his position as corporate representative, do not require solution, as we believe, for the reason that no evidence is introduced which tends to prove the alleged infringement otherwise than as such representative for the sole use and benefit of the corporation; nor is the question involved, whether he may or may not, on his own behalf, contest the validity of the patent under the facts in evidence.

The decree, therefore, can be upheld only on the proposition that the Macey Company is guilty of invading a valid patent monopoly, and we believe that question to be settled by the prior adjudication above mentioned, against the validity of the claims in suit. Privity of parties and identity of subject-matter and issues therein, substantially appear, as we believe, under the stipulated facts, to establish the defense of res adjudicata, within the authorities applicable to the case, cited in the briefs respectively. Moreover, the final decision and well-considered opinion of the Circuit Court of Appeals referred to (Globe-Wernicke Co. v. Fred Macey Co., 119 Fed. 696, 56 C. C. A. 304), if not strictly res. adjudicata thereof, is strongly persuasive, and we are impressed with no development in the present record or argument which should lead to a different conclusion.

The decree of the Circuit Court is reversed accordingly, and the cause remanded, with direction to dismiss the bill for want of equity.

NOTE.—The following is the opinion of Kohlsaat, Circuit Judge, in the Circuit Court:

KOHLSAAT, Circuit Judge. Complainant files the bill herein to restrain defendants from infringing patent No. 557,737, granted to defendant O. H. L. Wernicke, April 7, 1896, for sectional bookcases. Complainant is the owner of said patent through assignment from the patentee, Wernicke, who is the president and active manager of the defendant corporation. It appears that Wernicke was for some time after the assignment of the patent interested in and an employé of complainant; that while he so was employed the complainant brought suit in the Sixth judicial circuit for infringement against the Fred Macey Company, a copartnership composed of Fred Macey and Charles W. Matheson; that such proceedings were had in said cause that said patent was declared invalid, as to the claims thereof covering defendant's device, by the Circuit Court of Appeals for the Sixth Circuit on November 5, 1902 (Globe-Wernicke Company v. Fred Macey Company, 119 Fed. 696, 56 C. C. A. 304); that pending said injunction proceedings, and in the early part of 1900, said copartnership, being a manufacturing concern, transferred its business to its successor, the Fred Macey Company, Limited; that thereafter, in the year 1904, the defendant became interested in said limited copartnership, and the name was changed to the Macey-Wernicke Company, Limited; that in the fall of 1905, Wernicke, assisted by others, sought to organize a corporation to be called the Macey-Wernicke Company, but was restrained on the application of complainant by one of the state courts of Michigan; and that in the

early part of 1906, Wernicke, as the moving spirit, together with others, some of whom were not members of the Macey-Wernicke Company, Limited, organized the defendant corporation, and was chosen president thereof and made active manager. The defendant corporation thereupon proceeded to manufacture and sell bookcases which were exact copies of complainant's device, plus some minor improvements thereon. It further appears that the defendant company succeeded as it were, by purchase, to the business of its predecessors, if they may be so termed, and acquired the plant, assets, good will, patents, trade-marks, and other property of its immediate predecessor, the Macey-Wernicke Company, Limited.

The defenses are invalidity of patent, noninfringement, and res adjudicata. It is defendants' contention that the said decree of the Circuit Court of Appeals for the Sixth Circuit declaring said patent invalid is res adjudicata as to the parties hereto. It appears that of the original parties defendant to said Sixth circuit suit Fred Macey died February 2, 1904, and before the defendant corporation, the Macey Company and the partnership known as the Macey-Wernicke Company, Limited, were created; that the other partner, Matheson, had withdrawn from the partnership prior to the date of incorporation; and it becomes pertinent to determine from the evidence whether the corporation defendant can, under the circumstances, be heard to assert its claim, by virtue of its alleged privity with the Fred Macey Company, to the estoppel or benefit of the decree of the courts of the Sixth circuit.

It appears from the record that the Fred Macey Company was then manufacturing a bookcase differing only in minor details from that of the patent in suit. This difference consisted mainly in the substitution of a dovetail interlocking device for a tongue and groove arrangement, whereby the cases are locked together laterally. If there is any one feature upon which the patent in suit can be sustained, it must be found in this as shown by the drawings and specification. This was the intimation of the court on the former adjudication, and is sustained by the evidence. To this extent the alleged infringement differs from that of the former suit. It is a well-grounded rule of law that res adjudicata prevails only where the parties and subject-matter actually passed on are identical, and is not a defense which is available in a doubtful case. Courts will examine into the previous adjudication for the purpose of ascertaining what questions were involved. They will also require clear proof as to parties affected by the former decision. Defendants insist that the defendant the Macey Company is in privity with the original copartnership, the Fred Macey Company, defendant in the former litigation, and is therefore entitled to the benefit of the decree in that case declaring the patent here in suit, so far as there involved, to be invalid. It is evident that the article there in suit was not conveyed to defendant; that is, there is no tangible article, no bookcase, here which was there relieved from the charge of infringement by the decision of the court. So that it is not a question of dealing with a device with regard to which the complainant had been denied relief. If defendant succeeded to any benefit of that decree, it could be only as to the right to manufacture and sell the bookcase there before the court. Just how far, if at all, such a right (if it be a property right) may be transferred without affecting the question of privity, is not clear. Generally speaking, the privity here claimed "must be about some specific thing which must necessarily be affected by the termination of the suit." Black on Judgments, § 550. Here the only thing adjudicated was that complainant could not maintain a suit for want of a valid patent. There was no res to which the estoppel attached, unless it can be said that the absence of power in the complainant to have the Fred Macey Company restrained from manufacturing and selling the bookcase was a property right.

All the definitions of privies involve relationship to some form of property. "Privies are those whose relationship to the same right of property is mutual and successive." Strayer v. Johnson, 1 Atl. 222, 225, 110 Pa. 21, 24. "Privity exists between two successive holders, when the latter takes under the earlier,

as by descent, or by law, grant, or voluntary transfer of possession." Sherin v. Brackett, 30 N. W. 551, 552, 36 Minn. 152, 154. "If the rights of two parties have been determined respecting a particular subject, and the subject-matter of the suit is afterwards assigned, the assignee takes it affected by the prior adjudication, and may avail himself of its advantages and is subject to its burdens." Whether complainant's inability to maintain a suit can be said to come within the res contemplated in these definitions is a matter of serious doubt. Taking into consideration the several transfers by which the business was eventually vested in the defendant corporation, the death of Fred Macey and the retirement of Matheson, the original members of Fred Macey Company, a copartnership, the changes incident to the creation of a limited copartnership, the advent of a number of new members, and more than 100 common stockholders of defendant corporation, and finally the lack of identity as to subject-matter involved, there seems to be no room for the contention that the former decision constitutes res adjudicata in this court.

Complainant insists that inasmuch as defendant Wernicke is estopped from denying the validity of the patent which he assigned to complainant, therefore defendant corporation is, under the facts in this case, also estopped, citing Siemens-Halske Electric Company v. Duncan Electric Mfg. Co., 142 Fed. 157, 73 C. C. A. 375, Mellor v. Carroll (C. C.) 141 Fed. 992, and many other cases. It is claimed that the corporation defendant is but a cover for Wernicke, and he is seeking in this way to evade the estoppel. The price paid him by complainant for the patent is alleged to be in excess of $100,000, so that the estoppel is a matter of considerable interest to complainant. Wernicke was made an officer of complainant company, and the name of the company was changed from that of the Globe Company to the Globe-Wernicke Company. Wernicke had heretofore been manufacturing and selling the book-cases under the name of the Wernicke Company, so that they were well known to the trade. The cases were advertised extensively, both before and during his connection with complainant, as Wernicke's invention. For some reason Wernicke withdrew from complainant company. After the lapse of a year or more he cast in his lot with the Fred Macey Company, Limited. The style of the copartnership was thereupon changed to that of the Macey-Wernicke Company, Limited. After vainly trying to have the business incorporated as the Macey-Wernicke Company, it was incorporated as the Macey Company, the present corporate defendant. This was in 1906. Wernicke was made president and active manager, and proceeded to manufacture the identical device of the patent. When he took charge of the limited partnership, Fred Macey, the organizer of the business was dead and the firm was practically insolvent.

In November, 1905, Wernicke, then manager of Macey-Wernicke Company, Limited, issued a statement to the several partners, of whom there were a large number, advising them that the copartnership had made a small profit during the year ending July 1, 1905, over and above its running expenses and interest on its preferred stock; that a committee appointed for the purpose considered the needs of the firm, whose indebtedness amounted to $285,418.35, of which $80,000 was secured by mortgage, $107,500 bank accommodations, $27,605 private loans, and $70,313.35 current bills and accounts payable; that the banks now demanded to be relieved; that the committee recommended that a new corporation be formed with a similar name to take over the business, the authorized capital to be $600,000, of which $400,000 was to be preferred stock at 6 per cent. and $200,000 common stock. Wernicke further says: "The writer has agreed to take or place $125,000 of the proposed common stock at par and pay the proceeds into the treasury, on condition that not less than $250,000 of the proposed preferred stock is taken by holders of stock in the present company." He then appeals to the stockholders, as he calls them, to come into the arrangement as a last chance. The company—i e., defendant corporation—was thereafter duly organized, and Wernicke was made president and general manager.

It is alleged by complainant that he invested the money received by him from complainant for the patent in suit in organizing a corporation to in-

fringe that patent. Thus we see that Wernicke was the mainspring of the reorganization. It was evident that the business would have to be wound up unless the reorganization was effected. Throughout the whole proceeding it is apparent that he was the inspiring medium in the reorganization. He at once began to put life into the company. The main item of manufacture seems to have been the bookcase of the patent in suit. It was advertised extensively as Wernicke's invention in connection with his portrait. He was described as "father of sectional bookcases," "the originator of the sectional idea which has revolutionized the bookcase business of the world," and "the inventor of modern sectional bookcases," all in connection with defendant corporation's business. These notices were placed in the leading newspapers. Wernicke sent out letters to the trade, claiming that the bookcases were made under his supervision at Grand Rapids, signing his own name thereto as inventor. In the Macey Monthly of January, 1905, he published an advertisement of the bookcases in connection with his picture as general manager, with the statement that "O. H. L. Wernicke, the inventor of modern sectional bookcases and sectional office furniture, was the first president of the Wernicke Company, which began the manufacture of sectional bookcases in Minneapolis in 1893," following this with a reference to his having been vice president of the complainant, his retirement therefrom, and his assumption of the management of the predecessor of the corporation defendant.

In fact, it appears that Wernicke was the one person who made the corporation business possible. But for him, the Macey-Wernicke Company, Limited, would have been wound up and distributed. He found a business, to be sure, but it had no chance of success. It was as good as dead. The most that can be said of it is that it constituted a nucleus around which to construct a corporate business. It does not appear to have had any considerable asset other than that attaching to its tangible property. Even Wernicke could infuse no life into it under the limited partnership. Its then moribund condition probably accounts for the failure of complainant to bring suit at that time. Under his inspiration and financial aid, most of the old firm members entered into a reorganization scheme, a corporation into which they put very substantial sums of money. The result justified their confidence in him. Thenceforth he seems to have been the corporation. His name and bookcase became the good will of the business.

Personally he knew he was estopped from infringing the patent in suit. He was active in the litigation against the original Fred Macey Company, which resulted in the adjudication of invalidity. He knew the defendants in that suit. Shortly after leaving complainant's employ, he joined himself to the old enemy of his patent. He seems to have reasoned that, if he could intrench himself and his estoppel behind the barricade of the res adjudicata of the Sixth circuit suit, he would be free to ignore his disability. His position was one of bad faith and in defiance of the reason of the rule of law upon which his estoppel was grounded.

It is a general rule of law that a corporation is entirely distinct from any of its stockholders. It is equally a legal principle that one cannot construct a corporation merely as a cover for his personal acts. It cannot be said, under the facts of this case, aside from the subsequent conduct of its business, that the purpose of the organizers, other than Wernicke, was to enable him to evade the estoppel. They had been manufacturing the bookcase for several years. On the other hand, they had, for the purpose of reviving the business, made it possible for him to secure supposed immunity. The corporation placed itself in his hands, as did the stockholders. All went into a scheme which had for its main factor the unfettered, if illegal, activity of Wernicke as against complainant's rights. In Mellor v. Carroll et al. (C. C.) 141 Fed. 992, Judge Lowell says: "Mere co-operation in the alleged infringement with the estopped assignor may not, as suggested in Continental Co. v. Pendergast [C. C.] 126 Fed. 381, be enough to create the estoppel. If the estopped assignor enters into business with others, who derive from him their knowledge

of the patented process or machine and, availing themselves of his knowledge and assistance, enter with him upon a manufacture infringing the patent which he has assigned, they are bound by his estoppel." Judge Lochren, in Wire Fence Co. v. Pendergast (C. C.) 126 Fed. 381, held that where the estopped person engaged with others in constructing and operating an infringing machine, and was very active in the premises, all of the parties would be subject to the estoppel. Judge Townsend held, in National Conduit Company v. Connecticut Pipe Mfg. Co. (C. C.) 73 Fed. 491, the estoppel against the assignor of a patent extends to a corporation formed and owned by him, even though another party owns a substantial interest with knowledge of the estoppel.

Wernicke in his answer asserts the invalidity of the patent in suit. His acts cannot be considered as disassociated from those of his corporation. He used the latter, as he uses his tongue, to assail and slander the child of his own brain, which he had sold to others for a large price. He may not be heard under the circumstances to assert the illegitimacy of his own progeny to the harm of those who have acted upon his assurances to the contrary. Having lent itself to his purpose, the defendant corporation must be estopped with him. Infringement is undoubted. Defendant's device is at best only an improvement on the patent in suit.

The injunction may issue as prayed.