## PREMIER REGISTER TABLE CO. v. WEST et al.

District Court, D. Massachusetts. September 28, 1927.

No. 2732.

1. **Patents** ⊚⇒129(2)—Assignor in manufacture of alleged infringing device held estopped to deny validity of patent.

Assignor and those associated with him in manufacture of alleged infringing device *held* estopped to deny validity of patent.

2. **Patents** ⊚⇒240—Patentable differences do not negative infringement.

Patentable differences do not negative infringement.

3. **Patents** ⊚⇒328—No. 1,343,600, claims 1-5, for combination of old elements in printer's register table, held infringed.

West & West patent, No. 1,343,600, claims 1-5, for combination of old elements in a printer's register table, *held* infringed.

In Equity. Suit by the Premier Register Table Company against James West and others. Decree for complainant.

Edward H. Palmer, Frederick L. Emery, and Emery, Booth, Janney & Varney, all of Boston, Mass., for plaintiff.

Geo. K. Woodworth and Frederick A. Tennant, both of Boston, Mass., for defendants.

BREWSTER, District Judge. This is an infringement suit involving letters patent No 1,343,600, issued June 15, 1920, to the plaintiff as assignee of Elbert L. West and the defendant James West.

The patent relates to a printer's alining or register table, which is equipped with a transparent top, with lighting means thereunder, with means for clamping and alining sheets, with an alining bar mounted for movement across the table top, and with means for preserving parallelism of the bar with the alining edge.

The purpose sought to be accomplished with the table is best stated in the patent as follows:

"This invention relates to furniture for printers' uses adapted for inspecting proof sheets to determine the alinement thereof, such as large sheets on which are arranged series of printed units such as a number of pages of a book which are to be printed simultaneously, and which it is required to arrange in precise alinement with one another so that when cut and trimmed the marginal edges of all the pages will be uniform."

After application had been filed, but before the patent had issued, the defendant West and the coinventor Elbert L. West assigned their interest in the rights secured by the application to the plaintiff corporation, which the inventors had caused to be organized under the laws of Massachusetts. The capital stock was all issued in equal shares to the assignors for the patent rights.

Subsequent to the date of the patent, the defendant West severed his connection with the plaintiff and proceeded to organize the defendant corporation, the National Printers' Supply Company. He is principal stockholder in the corporation, is active in the management of its affairs, and has acted as president and treasurer, or assistant treasurer, since the corporation was organized.

The defendant corporation has acquired rights in a patent issued September 28, 1926 (No. 1,601,461) covering a printer's line-up table with transparent top equipped with lights underneath, with means for alining and holding sheets, with a movable alining bar and means for keeping it always parallel with the alining stops.

The table is being manufactured upon the order of the National Printers' Supply Company by the defendant Wade. The plaintiff contends that the table manufactured by Wade for the defendant corporation constitutes infringement of its letters patent.

[1] The defendant West, as assignor, is estopped to deny the utility or validity of the invention. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316.

In view of the privity between the defendant West and the other defendants, each of them must be held likewise to be estopped. Continental Wire Fence Co. v. Pendergast (C. C.) 126 F. 381; Mellor v. Carroll (C. C.) 141 F. 992; Siemens-Halske Elec. Co. v. Duncan Elec. Co. (C. C. A.) 142 F. 157.

The only question, therefore, open to the defendants is whether the patented line-up table manufactured for the defendant corporation infringes upon one or more of the claims of the patent in suit. The claims involved are as follows:

"1. A printer's table equipped with a transparent top and with means for projecting light upward therethrough, said top having an alining edge at one side thereof with sheet-clamping means arranged to clamp a sheet alined by said edge, and an alining bar mounted for movement transversely across the table toward and from said alining edge.

"2. A printer's table equipped with a transparent top and with means for projecting light upward therethrough, said top having an alining edge at one side thereof with sheet-clamping means arranged to clamp a sheet alined by said edge.

"3. A printer's table equipped with a transparent top forwardly inclined with an alining ledge at the lower edge thereof and with sheet-clamping means arranged to clamp a sheet alined by said ledge and an alining bar mounted for movement transversely across the table toward and from said alining ledge and equipped with means for preserving its parallelism therewith.

"4. A printer's table equipped with a transparent top with means for projecting light upward therethrough, and an alining bar mounted for movement transversely over said top and equipped with means for preserving its parallelism with an alining edge of said table.

"5. A printer's table, comprising a plane surfaced inclined top with a transparent portion through which light may be projected upward, said top having an alining ledge at the lower edge thereof equipped with sheet-

clamping means formed as spring clips, and an alining bar mounted for movement over said top toward and from said alining ledge having depending cheek members carried thereby and equipped with anti-friction members engaging said top, and means for preserving parallelism of movement of said bar with respect to said alining ledge of the table top."

It will be observed that these claims are for combinations of mechanical elements brought together in a printer's register table. These elements are (1) a transparent top; (2) means for projecting light upward through said top; (3) an alining edge or ledge; (4) sheet-clamping means arranged to clamp the alined sheet; (5) an alining bar mounted so as to be moved across the table top; and (6) means for preserving the parallelism of the bar with the alining edge.

The first claim is for a combination of the first four elements; the second for a combination of only the first three elements; the third for a combination of all of the elements except that it does not include lighting means; and the fourth claim does not include in the combination the alining edge or the sheet-clamping means.

These several elements of the different combinations are claimed in broad general terms. They are claimed not specifically but generically. It is conceded that all the elements of plaintiff's patented combinations are old in the prior patented art, not only generically but specifically. The claims were allowed on the broad ground that the combinations were new and patentable. The file wrapper so indicated. Defendants' table, as disclosed in the patent and as sold commercially, combines in a printer's register table (1) a transparent top; (2) illuminating means beneath the top; (3) and (4) sheet stop and grippers arranged at the forward edge of the table; (5) an alining bar disposed parallel to a line connecting the forward end of the sheet stops; and (6) means for maintaining the parallelism of the alining bar (claims 1, 5, and 6 of West, 1,601,-461). These mechanical elements perform the same functions as the corresponding elements in plaintiff's table. The defendants seek to escape the charge of infringement by pointing to certain structural differences and basing thereon the argument that their table does not embody the combinations protected by plaintiff's patent, or that the substituted elements do not fall within the range of equivalents which may be accorded a patent of a secondary character. That plaintiff's patent is not a pioneer patent covering a primary invention cannot be successfully disputed. In order to dispose of defendant's contention it is necessary to compare in detail the alining edge of plaintiff's patent with the sheet stops of the defendants' table and also compare the means for keeping at all times the movable alining bar parallel with the alining edge or stops.

Plaintiff's patent discloses a table with an inclined top, having at its lower edge a ledge or straightedge bar which extends the whole length of the table. Mounted on and co-operating with this straightedge bar is a rod turning on "spaced apart bearings." To the rod are fixed at intervals cams, or eccentrics, adapted to engage spring-clamping fingers which in turn engage and clamp frictionally the edge of the paper sheet alined against the straightedge bar. In operation, the sheet is placed on the transparent top and brought down against the straightedge bar, and, by a turn of a knob at one end of the rod, the attached cams engage the spring clamp fingers and press them down upon the sheet, holding it in place.

The defendants' table had no straightedge bar or ledge extending across its front edge, but it is provided along that edge with movable sheet stops and grippers mounted on a channel carried by the framework of the table. These combined stops and grippers consist of a sheet stop finger and a sheet gripping finger. Springs hold the stop finger normally in contact with the table top and the grip fingers above it. By operating a cam lever, the gripping finger is brought down upon the sheet alined against the sheet stops, and the sheet thus brought to a proper position is held in place. It is because of this difference in mechanical means that the defendants assert that one of the essential elements of the combination disclosed in the first and second claims of plaintiff's patent is not present in defendants' combination. Of course, if any one element of plaintiff's combination patent is absent in the defendants' table, there is no infringement unless the substituted device falls within the limited field of equivalents allowed to the patent. Walker on Patents (5th Ed.) § 349, and cases cited.

The combined sheet stops and grippers on defendants' table perform the same function as plaintiff's alining edge and in the same way. Both aline the sheet when it is brought against the alining means. The fact that the sheet is brought in contact with a plurality of members arranged at one end of the table instead of a single member is of little significance. There still is identity of

function and substantial identity of mode of performing that function. Plaintiff's patent cannot be confined to a continuous alining edge. Assuming, as the estoppel requires, that the patent is valid, the plaintiff is entitled to protection against a printer's table equipped with mechanical means for alining sheets along one edge of the table, provided all the other elements are present in the combination.

See Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Brammer v. Schroeder (C. C. A.) 106 F. 918; Gould v. Rees, 15 Wall. 187, 21 L. Ed. 39.

I am of the opinion, therefore, that the defendants' sheet stops and sheet grippers are the mechanical equivalents of plaintiff's alining edge and sheet clamps, and I so rule.

The second point of difference relates to the means for maintaining the parallelism of the movable alining bar. Both tables are equipped with such a bar mounted so as to be moved transversely over the top of the table. Both the patent in suit and the patent issued to the defendant corporation include, in the respective combination claims, means for maintaining the parallelism of this alining bar with the alining edge or stops. But the defendants' patent discloses, as mechanical means to that end, a device quite unlike that shown in plaintiff's drawings and specifications or in its commercial product. The plaintiff's table is equipped with a bar having cheek pieces at each end extending downward past the edge of the table top and equipped at their lower end with rollers engaging underneath the edge of the top. Friction may be further reduced by ball bearings on the metallic edge of the top at each end of the bar. The bar is kept in a position of exact parallelism by means of parallel stretches of a continuous wire or filament mounted on pulleys at each corner of the table and underneath the top; the intermediate portions of the wire extending diagonally across and underneath the top of the table. This filament is engaged with the end of the bar in a suitable manner. With this arrangement of wires the bar is held to move precisely in parallelism with the alining edge.

The alining bar on defendants' table is provided with gears at each end, meshed into parallel racks along the sides of the top. These gears are connected by a shaft which extends across the table back of the alining bar. The racks and pinions will maintain the straight edge in parallelism with the line connecting the front of the sheet stops; at least it is so asserted in the specifications. If we were dealing with a pioneer patent, I might agree with plaintiff that the racks and pinions were the equivalent of the wires and pulleys. There is the identity of function, but to say that they perform that function in substantially the same way is to give to the word "substantially" a broader significance than a secondary patent could well claim. If, on the other hand, the device for maintaining this parallelism had been specifically claimed, I could agree with defendants that their table did not infringe the third and fourth claims of plaintiff's patent. This element, however, is claimed in very general terms as "means to preserve" the parallelism. Regardless of the doctrine of equivalents, if full effect is to be given the language of those claims, the defendants' device comes within the general description of the element. The result is that defendants' table combines all the elements of plaintiff's combination claims. But the defendants urge that the plaintiff's patent, if valid, must be so limited and defined as to cover only the specific instrumentalities shown in the drawings and specifications. It is their contention that such a limitation is required by the prior art, or by the history of the proceedings in the Patent Office. Several patents have been cited, notably, Sayler 997,418 (1911), Bashelier 1,057,373 (1913), Hancock 1,276,060 (1918), and Kimble 1,363,126 (application filed August 2, 1918), all of which are for printer's register tables combining several, but not all, of the mechanical elements of plaintiff's patent. The means shown in plaintiff's drawings for maintaining parallelism of the alining bar are identical with those shown in Berger 195,915 (1877) relating to a drawing board equipped with a movable parallel ruling device. In the practical art, I find that there had been in use since 1915 a printer's register table, referred to in briefs as the Calkins table, which combined all but one of the elements of plaintiff's combination patent. There are differences in form and structure, but all the mechanical elements of plaintiff's patent except the means for clamping and holding the aligned sheet were combined in the Calkins table, performing the same functions in the same way. Notwithstanding this state of the art, the inventors applied for and received a patent in terms sufficiently broad to cover a combination in one table structure of six generically defined elements in any form, viz.: (1) Transparent top; (2) lighting means; (3) alining edge; (4) clamping means; (5) traversing alining bar; and (6) means for preserving parallelism of the bar. Since Westinghouse v. Formica, 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316, it is

settled that an assignor of a patent is entitled to show the state of the prior art so far as it may aid in defining or limiting the scope of the patent, but it was observed by the Chief Justice that the "prior art cannot be used to destroy the patent and defeat the grant." I do not find in the prior art, as disclosed by the evidence, any legal justification for restricting the claims to the specific means shown to illustrate the combinations. To do so would be to derogate from the express grant. I suppose an assignor is estopped to use the prior art for that purpose as well as to wholly defeat the grant. The claims of a patent have been said to be the measure of the grant. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122. There is nothing in the specifications nor in the file wrapper to indicate any intention on the part of the Patent Office to limit, or on the part of the patentee to accept any limitation upon, the claims. On the contrary, the patent contains the following clause which cannot be disregarded. Continental Paper Bag Co. v. Eastern Paper Bag Co., supra.

"We are aware that the invention may be embodied in other specific forms without departing from the spirit or essential attributes thereof, and we therefore desire the present embodiment to be considered in all respects as illustrative and not restrictive; reference being had to the appended claims rather than to the foregoing description to indicate the scope of the invention."

[2] The defendants further submit that the issuance of a later patent to the defendant West for a combination in printer's alining tables creates a presumption that the table manufactured under the patent does not infringe. Obviously the invention of the defendant West constituted only an improvement in the art. There are numerous cases supporting the proposition that patentable differences do not negative infringement. Herman v. Youngstown Car Mfg. Co. (C. C. A.) 191 F. 579; Munising Paper Co., Limited, v. American Sulphite Pulp Co. (C. C. A.) 228 F. 700; J. F. Rowley Co. v. Columbus Pharmacal Co. (C. C. A.) 220 F. 127.

[3] I find and rule that defendants' table, as shown in Plaintiff's Exhibit 4, infringes each of the five claims of plaintiff's patent.

In the answer of the defendant West, certain allegations are made in the fifth paragraph thereof charging certain officers in the plaintiff corporation with fraud and duress, practiced in obtaining the assignment of the patent in suit. No evidence was offered in support of these allegations, and it should appear that these allegations are left wholly without foundation.

Decree may be entered granting injunctive relief and for such further proceedings as the plaintiff may desire, appropriate for a determination of plaintiff's damages and/or defendants' profits.