## ROLLMAN MFG. CO. v. UNIVERSAL HARDWARE WORKS.

(District Court, E. D. Pennsylvania.   August 1, 1913.)

No. 633.

1. Patents (§ 165*)—Construction of Claims.
   Where a limitation expressly stated in some of the claims of a patent is omitted from others, it cannot be read into them to avoid a charge of infringement.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. Patents (§ 165*) — Construction of Claims — Statement of Preferred Method of Construction.
   It is proper for an applicant for a patent to point out in his specification the preferred method of operation of his machine, but, in the absence of any expression in his claims making such details elements therein, they are not limited thereby.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

3. Patents (§ 129*)—Suit for Infringement—Estoppel.
   Where a corporation alleged to infringe a patent was organized by the patentee and his family after he assigned the patent, and he has since been its president and active manager, it is bound by his estoppel and cannot deny the validity of the patent but may show the prior art to define and limit the claims.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. § 129.*]

4. Patents (§ 328*)—Validity and Infringement—Cherry Stoner.
   The Rollman patent No. 686,139 for a cherry stoner held not anticipated, valid and infringed.

5. Patents (§ 222*)—Suit for Infringement—Recovery of Profits—Failure to Mark Article.
   The failure of the owner of a patent to mark the patented article as required by Rev. St. § 4900 (U. S. Comp. St. 1901, p. 3388), does not deprive him in a proper case of the right to an accounting for profits made by an infringer.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 352; Dec. Dig. § 222.*]

In Equity.   Suit by the Rollman Manufacturing Company against the Universal Hardware Works.   On final hearing.   Decree for complainant.

John A. Coyle and William H. Keller, both of Lancaster, Pa., and Archibald Cox, of New York City, for complainant.

John A. Hipple, of Lancaster, Pa., Henry P. Brown, of Philadelphia, Pa., and George L. Wheelock, of New York City, for defendant.

THOMPSON, District Judge.   This is a suit brought to restrain the infringement of letters patent No. 686,139 for a cherry stoning machine.   Michael A. Rollman, who was the inventor, filed his application January 21, 1901, and letters patent were issued November 5, 1901. By assignment dated October 26, 1900, Rollman had assigned to the Rollman Manufacturing Company, a limited liability partnership composed of himself, H. C. Schock, and Clarence Schock, as copartners,

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

all of his patentable devices, and on January 26, 1901, he specifically assigned his rights under the application for the patent in suit and in the letters patent to be granted thereon to the Rollman Manufacturing Company. On May 31, 1906, Rollman assigned to Harry C. Schock and Clarence Schock his interest in the Rollman Manufacturing Company, including all of his right or ownership individually and as a member of the company in all patents, together with the right to use the name "Rollman" in connection with such devices and inventions as might be manufactured and sold by the partnership or the members thereof, and, in consideration of the assignment, the other partners paid him the sum of $1,000 and agreed to indemnify him against any indebtedness of the company upon which he might be liable at the time of the transfer. The cherry seeder made by the complainant under the patent was known and sold under the name of "Rollman" and the business in the cherry seeders became a profitable one.

The defendant is a Pennsylvania corporation chartered March 27, 1912. The incorporators were Michael A. Rollman, the patentee under the patent in suit, subscriber to one share; his wife, Elizabeth E. Rollman, subscriber to one share; and his father-in-law, Henry S. Garber, subscriber to eight shares. Michael A. Rollman is the president of the corporation and the active manager of its business in which he is assisted by his wife. Henry S. Garber takes no part in the business of the company. The defendant, the Universal Hardware Works, manufactures and sells the cherry seeder claimed to be an infringement under the name of the "New Standard" and has stamped upon it the name "M. A. Rollman."

The claims in suit, as set out in the complainant's record, are conveniently stated as follows:

"Claim 8 claims: 'In a seeding machine (1) a seed-extracting knife; (2) a suitable frame in which to reciprocate said knife and (3) means carried by the knife to pick up the pulp; and (4) a stripper plate obliquely disposed in the path of the pulp ,whereby said plate will deflect the pulp laterally as and for the purpose set forth.'

"Claim 9 claims: 'In a cherry-seeding machine (1) a suitable frame; (2) a plunger carrying (3) a knife reciprocatingly mounted in said frame; (4) said knife being provided with means to pick up the cherry pulp (5) in combination with additional means (a) carried by the standard and (b) obliquely disposed in the path of the knife adapted to strip the pulp therefrom and deflect it laterally as and for the purpose set forth.'

"Claim 10 claims: 'The combination in a cherry-seeding machine of (1) a plunger; (2) a standard forming a support and guide for said plunger; and (3) a stripper plate supported by the standard at an angle oblique to the line of movement of the plunger as set forth.'

"Claim 13 claims: 'In a seeding machine (1) a standard having a pulp stripper disposed at an oblique angle to the plane of the standard (2) and a plunger reciprocatingly mounted in said standard (3) and means to hold the plunger against rotation as set forth.'"

The complainant's cherry seeder is constructed in accordance with the drawings accompanying the patent in suit. The defendant's machine is admitted to possess all of the elements covered by these claims. In construction, however, the machines differ in that the complainant's plunger is made to reciprocate by means of a spring, while that of the defendant reciprocates by means of a crank and cam.

The remaining difference between the two machines is that in the complainant's machine the frame in which the plunger and knife reciprocate is constructed at an incline to the vertical of about 30 degrees, while that of the defendant's machine is constructed horizontally. There appears to be no substantial dispute that, except for the inclined position and action of the complainant's seeder and the horizontal position and action of the defendant's seeder, the various parts of the respective machines are equivalents and the functions performed thereby are identical.

The complainant contends that the claims upon which the suit is based are to be construed as broadly as they read and, if so, include the horizontal position of the frame and horizontal action of the plunger and knife. The defendant contends that the claims in suit are to be construed in the light of the specifications pointing out the patentee's preferred construction and in view of the prior art of which it has introduced proof; as otherwise these claims are invalidated by the prior art and that reading the claims thus in view of the prior art, they must be limited to a construction and operation inclined to the vertical and do not include the horizontal construction and operation shown in the defendant's seeder. The complainant objects to evidence of the prior art to limit the claims upon the ground that the defendant, the Universal Hardware Works, is bound by the estoppel which would apply to Michael A. Rollman, the patentee and assignor of the patent. The defendant contends that, even if the corporation is estopped, that estoppel does not prevent the introduction and consideration of evidence of the prior art to limit the claims in suit. The defendant's position is that, in view of the prior art, the only novelty in the complainant"s patent is the standard inclined to the vertical with a horizontal stripper plate at an angle oblique to the line of movement of the reciprocating plunger and knife. It is perfectly apparent that, in the language of the claims in suit, there is no limitation of the invention to any angle of the frame and line of movement of the plunger and knife. The opinion of the defendant's expert is that, if the claims are read as they stand, they are anticipated by the prior art; but, if there is read into them a limitation from the specification to an inclined frame or standard, "then, of course, the prior art does not show such a construction," but then the defendant's machine does not infringe because its frame or standard is horizontal.

[1] From an examination of the specification and other claims in the patent in suit, I think it is conclusively shown that such a construction cannot by the terms of the specification be put upon the claims in suit. For example, as pointed out by complainant's counsel, claim 3 is limited to "a machine comprising an inclined U-shaped standard, a plunger reciprocatingly mounted in said standard and disposed in the same plane of inclination therewith," while the claims in suit call for a frame or standard irrespective of its inclination. The inclined standard is referred to in the specification as being the patentee's preferred construction over a vertical standard; the object being by means of the inclination of the standard to have the pulp of the cherry carried, while impaled upon the barbed end of the knife,

to a point at or beyond a perpendicular drawn from the outward edge of the hopper where the pulp would not drop back into the hopper containing the unstoned cherries, but, by being carried as described and given a lateral motion by contact with the inclined stripper plate, the pulp would be thrown into a proper receptacle outside the machine. The drawing accompanying the application for patent shows this preferred construction. The specification says:

"The inclination, therefore, of the standard 8 is not a mere incidence of the disposition of the hopper section 5 but possesses a functional importance of great value, and I therefore wish to secure in this application said combination and construction of parts, *together with substitutes and equivalents.* * * * It will be understood that various modifications may be made in the construction without departing from the spirit or scope of my invention."

Under the ordinary rule of interpretation, the limitation which is expressed in claim 3 and in the specification cannot be read into claims 8, 9, 10, and 13.

"Where a patent contains specific claims for the one form of structure described in the specification and shown in the drawing and also broad and general claims, the latter are not to be so limited as to make them a mere repetition of the specific claims." General Electric Co. v. E. H. Freeman Electric Co. (C. C.) 190 Fed. 34.

"Where a limitation expressly in some of the claims of a patent is omitted from others, it cannot be read into them to avoid a charge of infringement." Diamond Match Co. v. Ruby Match Co. (C. C.) 127 Fed. 341; Boyer v. Keller Tool Co., 127 Fed. 130, 62 C. C. A. 244; Ryder v. Schlichter, 126 Fed. 487, 61 C. C. A. 469; Wilson v. McCormick Co., 92 Fed. 167, 34 C. C. A. 280; Metallic Extraction Co. v. Brown, 110 Fed. 665, 49 C. C. A. 147.

[2] As to the defendant's contention that the claims of the patent are no broader than the details of the patentee's preferred construction described in the specification, it is difficult to see upon what ground this proposition is based. In order to comply with section 4888 of the Revised Statutes (U. S. Comp. St. 1901, p. 3383), it was necessary that in his specification the applicant should explain the principle thereof and the best mode in which he contemplated applying that principle, and it was therefore prudent, if not necessary, for him to point out some practical preferred method for the operation of the machine, but, in the absence of any expression in his claim making the details thus pointed out an element therein, they would not under the ordinary rules be limited thereby. Eastern Paper Bag Co. v. Continental Paper Bag Co. (C. C.) 142 Fed. 479.

As was stated by Mr. Chief Justice Fuller in Howe Machine Co. v. National Needle Co., 134 U. S. 388, 10 Sup. Ct. 570, 33 L. Ed. 963:

"Doubtless a claim is to be construed in connection with the explanation contained in the specification, and it may be so drawn as in effect to make the specification an essential part of it; but, since the inventor must particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery, the specification and drawings are usually looked at only for the purpose of better understanding the meaning of the claim, and certainly not for the purpose of changing it and making it different from what it is. As remarked by Mr. Justice Bradley in White v. Dunbar, 119 U. S. 47 [7 Sup. Ct. 72, 30 L. Ed. 303]: 'The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well

as an evasion of the law, to construe it in a manner different from the plain import of its terms.'"

[3] The questions bearing upon the claim asserted by the complainant that the defendant is estopped to limit the claims by evidence of the prior art may be next considered. Rollman was the patentee and was employed by the complainant during his connection with the Rollman Manufacturing Company for about five years after the assignment of the patent to the company. Finally in 1906, for valuable consideration, he assigned to his partners in the Rollman Manufacturing Company all of his interest in the company. The defendant has introduced some evidence tending to show that Rollman was not fairly treated by the remaining partners and that he was forced out of the partnership. This evidence cannot be considered after he has for years remained silent and made no effort to set aside the contract nor offered to return what he received thereunder. The defendant cannot at this late day put itself in a better position by collateral attack upon the consideration for the assignment. The evidence establishes satisfactorily the fact that Rollman controls the defendant company. He was one of the incorporators; his wife was named as treasurer at the time of the incorporation; and his father-in-law was the remaining subscriber to the stock of the company. Rollman is its president and the active manager of its business. His counsel, Mr. Hipple, was called to testify that Rollman was still the owner of but one share of the stock but declined to testify as to the names of the remaining stockholders or as to other facts showing Rollman's connection with the company. The defendant did not call Rollman as a witness. Under these circumstances, there being no evidence to the contrary, it must be presumed that the facts shown to exist at the time of the incorporation of the company continue to exist. If the contrary be true, it was within the power of the defendant to prove it. If Rollman, the patentee, were only a stockholder or officer of the company with no part in its active management, the company would not, in the absence of other facts to show control, be bound by his estoppel. Babcock & Wilcox Co. v. Toledo Boiler Works Co., 170 Fed. 81, 95 C. C. A. 363; Johnson Furnace & Engineering Co. v. Western Furnace Co., 178 Fed. 819, 102 C. C. A. 267. It is apparent from the evidence here, however, that the company was organized by Rollman and the members of his family and that he is in the active control of its business. Under this state of facts, the company is bound by his estoppel. Time Telegraph Co. v. Himmer (C. C.) 19 Fed. 322; Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87; Marvel Co. v. Pearl et al. (C. C.) 114 Fed. 946; Continental Wire Fence Co. v. Pendergast et al. (C. C.) 126 Fed. 381; Mellor v. Carroll et al. (C. C.) 141 Fed. 992; Automatic Switch Co. v. Monitor Mfg. Co. et al. (C. C.) 180 Fed. 983; Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co., 142 Fed. 157, 73 C. C. A. 375.

The question, then, is: To what extent is the defendant estopped? The complainant contends that under the authority of the opinion of Judge Baker for the Circuit Court of Appeals of the Seventh Circuit,

in Siemens-Halske Electric Co. v. Duncan Electric. Co., the estoppel applies to the extent of barring the patentee and the company controlled by him not only from denying the validity of the patent but also from limiting its claims by the prior art. The conclusion of the court in that case was that:

"Between contracting parties extraneous evidence is inadmissible if there is no ambiguity or uncertainty in the language of the description and claims, and that, if there is uncertainty, outside evidence is admissible only to make clear what the applicant meant to claim and the government to allow, and not for the purpose of showing, even in the slightest degree, that the applicant had no right to claim and that the government was improvident in allowing what was in fact claimed and allowed."

In the case of Noonan v. Chester Park Athletic Club Co. et al., 99 Fed. 90, at page 91, 39 C. C. A. 426, at page 427, Judge Lurton, now Mr. Justice Lurton, sitting with Judges Taft and Day, said:

"It seems to be well settled that the assignor of a patent is estopped from saying his patent is void for want of novelty or utility or because anticipated by prior inventions. But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned and thus determine the primary or secondary character of the patent assigned and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor and in favor of his assignee anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger."

As is shown in the exhaustive opinion of Judge Rose in the case of Automatic Switch Co. v. Monitor Mfg. Co., supra, in the Circuit Court for the District of Maryland, the Circuit Court of Appeals for the Sixth Circuit, after the decision in the Siemens-Halske Case, followed in the case of Babcock & Wilcox Co. v. Toledo Boiler Works Co., 170 Fed. 85, 95 C. C. A. 363, its prior decision in the case of Noonan v. Chester Park Athletic Club Co., and the position taken by the Circuit Court of Appeals in the Sixth Circuit was that of the Circuit Court of Appeals for the First Circuit in the case of Martin & Hill Case-Carrier Co. v. Martin, 67 Fed. 786, 14 C. C. A. 642. If the Siemens-Halske Case is to be construed as denying the right to introduce evidence of the prior art except to explain ambiguity or uncertainty in the claims, the weight of authority is undoubtedly in favor of the rule laid down by Mr. Justice Lurton in the case of Noonan v. Chester Park Co.

[4] In order to determine the bearing of the prior art upon the claims in suit, it should be borne in mind, as explained in effect by the experts for both parties, that the object involved in a cherry-seeding machine is to take a cherry from the supply of them and deposit the stone or seed in one place or receptacle and the pulp or stoned cherry in a different place or receptacle, and that a successful machine is one which will do this as quickly and certainly as possible and with as little loss of juice or injury to the cherry as possible.

The essential feature of the complainant's claims no doubt consists

in the combination with other elements undoubtedly old of the plunger carrying the knife reciprocally mounted in a standard with a stripper plate obliquely disposed in the path of the knife adapted to strip the pulp from the knife and deflect it laterally. Therefore, in order to determine whether the claims are limited by the prior art, it is necessary to ascertain whether the patents offered in evidence to show the prior art disclose a combination of a reciprocating knife and plunger mounted in a frame with a stripper plate obliquely disposed in the path of the knife, the standard being at an angle other than that designated as the patentee's preferred type, or whether equivalents thereto are disclosed.

The Van Kannel machine shows a plunger moving upon a sliding upright frame; the plunger being provided with needles to force the stone from the cherry, the pulp being removed by the device of an oscillating arm which carries the plunger and needles to one side and then upward through the tines of a claw by which the pulp is pushed off the needles and drops vertically into a discharge spout. It is obvious that the Van Kannell construction does not contain the essential feature of the Rollman patent of the obliquely disposed stripper plate giving a lateral motion to the pulp; whatever lateral motion occurs being prior to the release of the pulp from the needles. In fact, such lateral motion as the oblique stripper plate gives was apparently not contemplated, as a trough is provided below the stripper fork in order that the pulp may drop vertically therein.

Neither has the Gear cherry stoner the standard or frame with a reciprocating plunger and stripper plate oblique to the line of movement of the plunger, but the pulp is dropped perpendicularly into a trough.

The Webster structure is somewhat similar in construction to the Rollman in that the plunger reciprocates in a fixed standard, but the Webster patent lacks in its claims the obliquely disposed stripper plate. Evidence was introduced intended to show that the Webster cherry stoner had been used with the oblique stripper plate, and a photograph of the model deposited in the Patent Office was produced showing the stripper plate in the oblique position shown in complainant's seeder. The evidence as to the use of the stripper plate in the oblique position is not sufficiently convincing to establish such use in the absence of any claims in the Webster patent; neither is the evidence as to the model sufficient in my opinion to establish the fact that the stripper plate was intended to be used otherwise than at right angles to the plane of the frame and plunger. The file wrapper of the patent in suit shows that the Webster patent was considered by the examiner as possibly anticipating the patent in suit. The attention of the examiner was called by the patentee to the fact that in the Webster cherry stoner the stripper plate was not obliquely disposed as in complainant's patent, and the patent was issued. The construction of the model offered in evidence makes it apparent that as constructed the oblique position of the stripper plate was not in contemplation of the original maker of the model nor the patentee. The stripper plate is loosely attached to the standard so that it may be

turned obliquely, but its construction indicates that it was not constructed with that end in view. The holes in the stripper plate through which the knife passes are not elliptical, nor are the sides of the plate within the holes inclined so as to adapt it to the direction of the knife through the plate as it would be if such construction were within the contemplation of the inventor.

In the Buck patent there is no standard or frame within which a reciprocating knife moves and there is no stripper plate obliquely disposed in the path of the knife to release the pulp with a lateral motion from the knife. Neither does the Buck and Kirk patent disclose this essential feature of the patent in suit, but a sliding pan is provided to receive the pulp as it drops from the stripper.

In the Brown patent the pulp is removed by a discharging arm which strikes it from the plunger.

In none of the patents offered to show the prior art is there anticipation of the essential feature of the patent in suit unless it be that any device by which the cherry is pierced, the stone ejected, and the pulp upon the return movement is stripped from the member upon which it was impaled is an anticipation of the pulp-stripping feature of the patent in suit. If the patents relied upon by the defendant show want of novelty or anticipation of the Rollman cherry stoner, they invalidate claims 8, 9, 10, and 13 in their entire breadth.

A careful examination of the testimony of defendant's expert upon these patents has failed to indicate in what respect they anticipate the broad language of the claims in suit and escape anticipating those claims as defendant would limit them. In short, if these patents anticipate complainant's knife and plunger reciprocating in a frame with an obliquely disposed stripper plate, they anticipate in every angle in which the frame can be constructed.

The effect of the prior art, therefore, if defendant's contentions are correct, would be to invalidate the claims in toto. This is exactly what the rule as to estoppel laid down in Noonan v. Chester Park Athletic Co. precludes as to this defendant. Without regard to estoppel, however, I have been unable to discover in the evidence of prior art the combination of reciprocating plunger and obliquely disposed stripper plate covered by complainant's claims. The evidence of prior art shows that the same general end and purpose are sought to be accomplished by the devices in the several patents. In the patent in suit, the end or purpose, in addition to those covered by the prior patents offered in evidence, namely, the ejection of the pulp or cherry laterally, was sought to be accomplished. The fact that with this exception the end and purpose of the various devices shown in the prior art are identical with that of the patent in suit is not material. An invention must consist of new and useful means of obtaining an end or purpose.

"In other words, the subject of a patent is the device or mechanical means by which the desired result is to be secured. * * * Tested by these authorities, the validity of the patent in question must be ascertained, not from a consideration of the purposes sought to be accomplished, but of the means pointed out for the attainment thereof, and if such means, adapted to effect the desired results, do not involve invention, they can derive no aid or sup-

port from the end which was sought to be secured." Knapp v. Morss, 150 U. S. 227, 228, 14 Sup. Ct. 81, 84 (37 L. Ed. 1059).

The device of the oblique stripper plate, so far as appears, was not present in prior patent devices. Hence the prior art neither limits nor invalidates the claims in suit. Unless the claims of the patent in suit are limited, as contended by the defendant's expert, to a standard inclined to the vertical at less than a right angle, the defendant under the doctrine of equivalents has infringed. "The functional importance of great value," which the patentee described in his specification for the inclination of the standard, consists in the fact that the inclination of the standard carries the stripper plate to a point at or beyond a perpendicular drawn from the outward edge of the hopper. This function would obviously be obtained in a degree proportionate to the extent of the inclination of the standard from the perpendicular. It is obvious, therefore, that when the standard operates horizontally, as in defendant's machine, it is a mere modification or equivalent of the arrangement of the standard described in the specification of the patent. That the functions of the defendant's construction and that of the patented machine are identical in causing the pulp, in coming in contact with the obliquely disposed stripper plate, to be laterally thrown outside of the hopper, and that there is substantial identity of way of performing the function, is too apparent to require elaboration. It is clearly demonstrated in my opinion that the difference in the way of performing the function is a mere difference in mechanical construction, and that the defendant's construction is a colorable change in form of the construction of the complainant. As evidence of prior art cannot be invoked to invalidate the patent, it must be held as to this defendant that the patent in suit is valid and the defendant has infringed.

The defendant in its answer denies the averment in the bill of complaint of marking with notice of patent as required by section 4900, Compiled Statutes (U. S. Comp. Stat. p. 3388). By that section it is made the duty of every patentee or his assigns, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that it is patented by fixing upon the article the word "patented," together with the day and year the patent was granted, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice; and in any suit for infringement, by a party failing so to mark, no damages shall be recovered by the plaintiff, except upon proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented.

In the case of Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426, it was held, in an opinion by Mr. Justice Gray, that damages cannot be recovered without alleging and proving either that the patented articles made and sold or the packages containing them were marked "patented" or else that the plaintiff gave notice to the defendant of his patent and of their infringement.

In order to sustain the burden of proof put upon the complainant,

Clarence Schock, one of the partners of complainant company, was called, who produced a specimen of one of the patent cherry seeders having stamped into the metal upon the top of the knob of the plunger the proper patent notice. Mr. Schock testified that all of the complainant's cherry seeders had been marked with the patent notice, as shown in the exhibit, since the issuance of the patent. The defendant in sustaining the issue as to marking introduced in evidence two of the complainant's cherry seeders without any patent notice fixed thereon, one of which was purchased September 28, 1911, by Michael A. Rollman from a hardware dealer in Lancaster, and the other of which was purchased by the manager of a hardware company at Lancaster from the complainant. The complainant relied in rebuttal upon a stipulation between the parties as follows:

"That if Clarence Schock were recalled as a witness in this case he would testify that every cherry stoner made under the patent in suit and sold since the date of such patent by the complainant herein has had a tag attached thereto, such tag being identical with the tag attached to the machine, 'Defendant's Exhibit Overdeer Seeder,' and would further testify he is in the coal and lumber business and his office is not in the factory and never was; that the cherry stoners are shipped from the factory; and that he does not oversee or attend to the actual packing or shipping."

In view of the positive evidence by the defendant as to failure to mark upon the patented articles produced, the complainant has not, in my opinion, sustained the burden of proof required under the plain language of the statute. The weight of Mr. Schock's testimony in chief is diminished by the fact appearing in the stipulation that the cherry seeders are shipped from the factory and that he does not oversee or attend to the actual packing or shipping. It was open to the complainant to call witnesses who did attend to the work of stamping, packing, and shipping the patented articles, but they failed to do this, and in the state of the evidence I am not satisfied that the cherry seeders were marked as required by the plain language of the act. This is not a case coming within the alternative provision as to fixing a label upon the article or the package when, from the character of the article, the notice cannot be fixed upon the article itself. The attaching of the tags containing the notice is clearly not within the term "fixed thereon." The effect of the failure to mark is that no damages can be recovered "except on proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented."

The complainant relies on the admission in the defendant's answer "that it had notice of said letters patent prior to the commencement of this suit, * * * but it alleges * * * that it immediately referred the question of infringement to its counsel, and has at all times endeavored to avoid any infringement." This admission does not help the complainant to meet the requirements of the act, as it must be proved "that the defendant was duly notified of the *infringement* and continued, after such notice, to make, use, or vend the article so patented." If the admission is sufficient to dispense with proof that the defendant was duly notified of the infringement, the record still lacks proof of the defendant's continuance after such notice to make,

use, or vend the article so patented. True it was stipulated, as appears by complainant's record:

"That the defendant herein made and sold cherry stoners like the cherry stoner marked, 'Complainant's exhibit defendant's cherry stoner' (which is hereby put in evidence), subsequent to the issue of letters patent No. 686,139 of November 5, 1901, and prior to the institution of this suit."

There is nothing on the record, however, to show that the defendant continued to make and sell the cherry stoners after the date of the notice of infringement, if the notice of the patent was notice of infringement. The complainant, having failed to meet the requirements of section 4900, is not entitled to damages.

[5] While the provisions of section 4900, Compiled Statutes, deprive the complainant of the right to recover damages by reason of its failure to mark, it is not thereby deprived in a proper case of its right to an accounting for the defendant's profits. Section 4921, Compiled Statutes, as amended 1897 (U. S. Comp. St. 1901, p. 3395); Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Beach v. Hatch (C. C.) 153 Fed. 763; Mast v. Superior Drill Co., 154 Fed. 45, 83 C. C. A. 157.

A decree for an injunction and an accounting for profits will be entered for the complainant, with costs to be taxed.