UNDERWOOD TYPEWRITER CO. v. MANNING.

(District Court, E. D. New York. March 1, 1915.)

1. PATENTS ☞266—SUIT FOR INFRINGEMENT—PARTIES.

An individual cannot be held liable for infringement of a patent, where the alleged infringing device was made and sold by a corporation of which he was not in control, and which is not shown to be insolvent, independently of an action against the corporation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 410; Dec. Dig. ☞266.]

2. PATENTS ☞129—SUIT FOR INFRINGEMENT—ESTOPPEL OF PATENTEE TO DENY VALIDITY.

A patentee cannot contest the validity of his patent, when sued for infringement by an assignee.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ☞129.]

In Equity. Suit by the Underwood Typewriter Company against Edward J. Manning. On final hearing. Decree for defendant.

See, also, 165 Fed. 451.

Briesen & Knauth, of New York City (Arthur v. Briesen and Eugene Eble, both of New York City, of counsel), for plaintiff.

Edward C. Davidson, of New York City, for defendant.

CHATFIELD, District Judge. Final hearing has been had in an action brought upon United States letters patent No. 612,858, granted October 25, 1898, to Edward J. Manning, the defendant, and assigned to the Wagner Typewriter Corporation, of which the plaintiff is the successor.

The circumstances of the entire matter are unusual. Action was brought upon two patents, the one involved in this suit and No. 609,036. In this suit a motion was made for preliminary injunction, based upon the proposition that the defendant, as the patentee, could not contest the validity of the patent obtained upon his own application, and basing infringement upon allegations that the defendant had entered into a contract with a rival corporation, which it was charged had used the inventions of the patents taken out by the defendant as manager and superintendent of the Royal Typewriter Company's factory.

The application for preliminary injunction was denied, after an opinion had been written setting forth the facts and considering many of the issues raised upon the subject of patentability and infringement at the final hearing. The reasons for this denial were the impossibility

of determining the question of infringement by a third party (the Royal Typewriter Company) upon affidavits, and the refusal of this court to base preliminary injunctive relief against Manning, the individual, upon the sole ground of an estoppel, which would not exist if the action were brought primarily against the Royal Typewriter Company, even though Manning might have been included as an individual and personal infringer.

The court assumed that the case as tried might ultimately prove to depend upon the issues as to which Manning was said to be estopped, coupled with that of infringement, or it might be solely whether Manning should be held responsible for some act of unfair competition, or apparent contributory infringement, as to which the plaintiff might be entitled to relief, because of his personal acts.

In both actions the plaintiff then made a motion to bring on for argument a plea interposed by the defendant, in which Manning seemed to be relying upon the right of the Royal Typewriter Company to contest the validity of his (Manning's) patents. The plea was therefore overruled (165 Fed. 451), and the issue of infringement, which seemed to be presented on the argument of the plea, was left for disposal upon such answer as the defendant might see fit to interpose.

A motion was then made in each action by the Royal Typewriter Company for leave to intervene and to defend the actions. This motion was denied, as it did not appear to the court that the plaintiff, if it did not see fit to sue the corporation, which was manufacturing the so-called infringing article, should be forced into litigation where the defenses of the validity of the patents would be available, although they could not be raised in the action as started.

It will be seen that the plaintiff seemed to make no accusation of infringement against the Royal Typewriter Company, except as Manning used it for his own purposes, or else that the plaintiff did not wish to sue the Royal Typewriter Company as infringer (even though he might be thereby condoning the infringement), unless he could hold Manning and affect the operations of the Royal Typewriter Company thereby.

The motions of the Royal Typewriter Company for leave to intervene were denied, upon the additional ground that the charge against Manning could be disposed of in these actions, without the presence of the Royal Typewriter Company, as to any acts brought home to Manning, and there seemed to be no reason why he should not sustain the burden of showing the right to do as he apparently had done.

The cases then came on for final hearing upon answers denying generally the validity of the patents, from the standpoints of patentability and novelty or invention in the improvement shown, also denying infringement either by Manning or by the Royal Typewriter Company, and also denying on Manning's part any of the acts from which the plaintiff sought to charge him with responsibility for the alleged changes in the Royal Typewriter, under Manning's direction. But one action has gone to trial; the other, on patent No. 609,036, having been discontinued by consent.

[1] In the action which has gone to trial it appears that no steps have been taken by the plaintiff to show infringement of the patent in

suit, No. 612,858, by the bringing of an action against the Royal Typewriter Company, although nearly seven years have elapsed since the present action against Manning was instituted. The patent will expire in October, 1915, and the possibility of meeting the defense of laches would seem to depend largely upon the outcome of this present action against Manning.

But in the meanwhile, in the year 1912, Mr. Manning left the employment of the Royal Typewriter Company and has engaged in other business. Assuming that he was liable to injunction if he were infringing the patent taken out by himself, and even if the possibility of his return to such infringing acts might make it seem advisable to consider the matter in equity, and not to send the parties to a court of law to recover any provable damage, nevertheless the present case presents a situation where this rule is hardly applicable. As was said upon the motion for preliminary injunction, "neither at law nor equity can an individual * * * be held for infringement independently of an action against the corporation," where the corporation is conducting the business complained of, and is not shown to be insolvent, nor being used by the individual as a cloak for his own personal acts. Even in a case where an individual was hiding behind the guise of a corporation, the corporation would be a proper, and in most cases a necessary, party.

So here the plaintiff had a difficult situation, if the Royal Typewriter Company was not brought in by it. But, if it saw fit to keep them out, it must take the issue as it presents itself. When Mr. Manning left the Royal Typewriter Company, it became impossible to determine whether the Royal Typewriter Company had the right to continue to manufacture the articles which were claimed by the plaintiff to be infringements of its patents, for the reason that different defenses were open to the Royal Typewriter Company, and a decree against Manning would not dispose of that case.

As to subsequent acts by the Royal Typewriter Company, we should therefore be exercising the rights of a court of equity, upon a doctrine of estoppel against Manning as to acts which it is apparent upon the record were not his individual infringement, even if shown to be infringement at all, and in which the accounting for money damages would have to be sought against the primary infringer (that is, the Royal Typewriter Company, as has been intimated), even if Manning could be treated as a joint tort-feasor for his own participation in other acts, before leaving the Royal Typewriter Company.

No case has been cited, and there would seem to be no reason for proceeding to judgment in equity against Manning alone, under such circumstances as those shown in the present case, and where the other alleged tort-feasor (that is, the Royal Typewriter Company) would not be bound by the determination of the issues as against Manning.

But the situation has been further complicated by the desire of the Royal Typewriter Company to intervene in the action, and by the attempt, in spite of the denial of the court of its motion so to do, to call witnesses on behalf of Manning, who seek to prove everything which could be presented as defenses if the action were against the Royal Typewriter Company.

[2] Over objection by the plaintiff, there has been placed upon the record evidence of the prior art and as to the alleged patentability and novelty of the Manning invention. As to invention, novelty, and public use by the inventor or others, there would seem to be no question that such evidence could not be introduced in this case. Ball & Socket Fastener Co. v. Ball Glove Fastening Co., 58 Fed. 818, 7 C. C. A. 498: Noonan v. Chester Park Athletic Club Co., 99 Fed. 90, 39 C. C. A. 426; Rollman Mfg. Co. v. Universal Hardware Works (D. C.) 207 Fed. 97.

It would seem *from the record* that the Royal and the Underwood are substantially the only typewriters now upon the market, producing a visible writing and using the front-face method of striking the ribbon with the type, which depend upon anything resembling the device of the patent in suit; and it also appears that both of these machines use what is known as a type-bar guide, to carefully bring the type-bar as accurately as possible to the position where the letter is desired to be placed upon the paper.

The evidence shows that the Underwood used the type-bar guide at the time of the application by Manning for his patent. It appears from the testimony of certain witnesses that the Royal Typewriter Company has followed the ideas contained in the patents of one Hess, who was an officer of that company, and that before Manning went to the Royal Typewriter Company it had present in its machines a universal bar or segment of a circle, which, if adjusted, would have performed exactly the function which Manning claims as the feature of his invention in the patent in suit.

According to all the testimony by the defendant, no change was made in the position of this bar after Manning's advent, while the plaintiff seeks to show, by measurement of exhibits in the case, that this bar was adjusted after Manning went with the Royal Typewriter Company, so as to serve the purpose of receiving the blow from the type-bar just before or just as the type, under the impulse of the key, would strike the paper, or the platen, if no paper were present.

Here, again, we have a serious issue of fact; but if the presence of the bar and the possibility of its adjustment, so as to meet the claims of the patent in suit, render the machine liable to injunction, it is apparent that the Royal Typewriter Company has been making use of the device from a time antedating Manning's presence, and that it is responsible for all such use as can be shown to be infringement or unlawful.

A further serious question of fact has been raised in the case over the actual effect of this universal bar, if sufficient paper, carbon, and ribbon be present upon the platen, so that the type will reach the paper before the type-bar would strike the block or abutment furnished by the so-called universal bar.

It is contended by the witnesses for the defendant that Manning, by disclaiming in the Patent Office any idea except that of arranging the use of the bar so as to strike the type-bar prior to the impact of the type upon the platen or paper, has limited his invention so that it does not cover the general machine of the Royal Typewriter Company, as adjusted in the ordinary case.

Claim 1 of the Manning patent is as follows:

"In a typewriting machine, the combination of a suitable platen or paper-support, an oscillatory type-bar, a finger-key for operating said type-bar, and a rigid abutment with which said type-bar is adapted to reach contact before a type thereon reaches contact with the platen, substantially as described and for the purpose specified."

In this it will be seen that no mention is made of the paper, but that the bar is to strike the abutment before the type strikes the platen, although it is evident that Manning did not consider the presence of paper and ribbon as sufficient to change the result. A number of the patents in the prior art have been introduced, showing abutments or bars located at various places between the type and the pivot about which the type-bar is rotated, which were designed to prevent the striking of too heavy a blow by the type upon the paper or platen, or to arrest the motion of the type-bar at a certain point.

There is nothing in these patents which in any way indicates appreciation of the advantages claimed by Manning in locating this bar at such a point as to allow the whipping motion caused by the continued momentum of the type-head, nor do these patents show any appreciation or teaching of the idea (necessarily involved, but not expressly claimed by Manning) that the mere arrest of forward motion by an abutment with the resilient rebound of the type-head thereafter would eradicate some or all of the so-called ghost lines which had caused trouble in the Underwood machines prior to the Manning patent. Some of the earlier patents do show application of the idea that the striking of the type-bar upon the abutment will cause immediately a rebound or an increased velocity of motion in the opposite direction, and it is this physical feature which is taken advantage of by Manning in insuring but one blow of the whipping motion immediately at the time of striking the abutment with the type-bar.

But the very statement of these questions shows the impossibility of satisfactorily disposing of the case by considering the question of infringement in connection with the estoppel of Manning. If Manning cannot be heard to deny the validity of his patent, the above questions would have to be answered in the plaintiff's favor. But, when he raises the question of infringement, he immediately brings in the prior methods of the Royal Typewriter Company, and thus injects the issue of patentability. Even though the door be thus opened, the determination of the issue will be entirely useless, as it would not be binding upon the Royal Typewriter Company, if decided in the plaintiff's favor in this case upon the doctrine of estoppel. Any broader decision would be a determination of the allegations against the Royal Typewriter Company, and they are not properly before the court.

As the plaintiff, therefore, seems to have been seeking to prevent aid by Manning to the Royal Typewriter Company, the departure of Manning, over two years ago, has left, from that standpoint, only the question of damages possible of consideration, and as to that the plaintiff should be left to his action against the Royal Typewriter Company, and the equity proceeding against Manning should be dismissed. In so far as the suit against the Royal Typewriter Company might involve the same issues, as to which the large amount of testimony

on the subject of invention and infringement has been presented in this case, it does not seem to the court that either the plaintiff or the defendant can complain, for each of them has throughout this action sought to serve its own purposes, and to have the court pass upon what were substantially collateral questions, instead of those which could be urged by the parties, respectively, under the issue.

The suit, therefore, will be dismissed, upon the finding that Manning was and is estopped from contesting the validity of his own patent, but that no necessity for present injunction against him is shown, and that any claim for damages should, under the circumstances, be urged against the Royal Typewriter Company, if the plaintiff be so advised. No costs will be allowed either party in the present action.